## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## DURHAM DIVISION

DERRICK PEREZ SCOTT,

*On behalf of himself and all similarly situated individuals*

                    Plaintiff,

vs.

FULL HOUSE MARKETING, INC.,

                    Defendant.

CASE NO.: 1:21-cv-00242-WO-JLW

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Derrick Perez Scott ("Plaintiff" or "Mr. Scott"), by and through his attorneys, and on behalf of himself, the Putative Class set forth below, and in the public interest, brings the following First Amended Class Action Complaint against Defendant, Full House Marketing, Inc. ("Defendant" or "Full House Marketing"), for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

## PRELIMINARY STATEMENT

1.     Defendant is an employment agency and single source of marketing, training, and staffing support for Residential Property Management organizations, and operates throughout North and South Carolina and Michigan.

1

2. Defendant routinely obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for taking adverse employment action, such as failure to hire, failure to promote, and termination.

3. One of the key protections the FCRA provides consumers in the employment context is the requirement that employers—*before* they use a consumer report background check to make an adverse employment decision—provide consumers with a copy of the report and a written summary of their FCRA rights.

4. Defendant violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiff and other Putative Class members without first providing Plaintiff and other affected class members with a copy of the pertinent consumer report, and without providing them a reasonable opportunity to respond to the information in the report and discuss it with Defendant and/or dispute it with the consumer reporting agency who prepared the report.

5. In Count One, Plaintiff asserts an FCRA claim under 15 U.S.C. § 1681b(b)(3)(A) on behalf of an "Adverse Action Class," consisting of:

> **All Full House Marketing, Inc. employees and prospective employees in the United States against whom adverse employment action was taken by Full House Marketing,**

2

**based, in whole or in part, on information contained in a consumer report obtained within five years of the filing of this complaint through the date of final judgment in this action, and who were not provided with a copy of their consumer report prior to the adverse action.**

6.     On behalf of himself and the Putative Class, Plaintiff seeks actual damages, statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

**THE PARTIES**

7.     Individual and representative Plaintiff, Derrick Perez Scott ("Plaintiff"), is an individual person who applied for multiple employment positions with Defendant in this District and at all times pertinent hereto resided in the City of Rock Hill, York County, South Carolina. Plaintiff is a member of the Putative Class defined below.

8.     Defendant Full House Marketing, Inc. ("Defendant") is a corporation with a principal place of business located at 1005 Slater Road, #220, Durham, North Carolina 27703, and user of consumer reports as contemplated by the FCRA, 15 U.S.C. § 1681b.

**JURISDICTION AND VENUE**

9.     This Court has federal question jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant conducts business, maintains offices, performs services, and resides in this District.

## **FACTUAL ALLEGATIONS REGARDING DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

### *Background Checks*

11. Defendant conducts background checks on many of its job applicants as part of a standard recruitment screening process.

12. Defendant does not perform these background checks in-house. Rather, Defendant relies on a third-party consumer reporting agency, Resolve Partners, LLC ("Resolve Partners"), to obtain this information and report it to Defendant in the form of a Background Screening Report. These Background Screening Reports constitute "consumer reports" for purposes of the FCRA.

### *The FCRA's Protections for Job Seekers*

13. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one prepared in Mr. Scott's name.

14. The FCRA provides a number of protections for job applicants who are subjected to background checks.

15. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

4

16.    The FCRA requires that any person who uses a report for employment purposes must:

> [B]efore taking any adverse action based in whole or in part on the report. . . provide to the consumer to whom the report relates—
>
>> a.   a copy of the report; and
>>
>> b.   a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3).

15 U.S.C. § 1681b(b)(3).

17.    The pre-adverse action notification provision protects job applicants and employees by "provid[ing] the consumer with knowledge of information the [consumer reporting agency] has reported about him or her that is going to result in adverse action in an employment context, affording the individual an opportunity to respond to it." FTC Advisory Opinion to Leathers (Sept. 9, 1998), available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98; *see also Moore v. Rite Aid Hdqtrs Corp,* No. CIV 13-1515, 2015 WL 3444227, at *4 (E.D. Pa. May 29, 2015) *citing Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) ("Section 1681b(b)(3)(A) thus requires an employer to provide job applicants with their background report, summary of rights, and a "real opportunity" to contest the contents of the background report before the employer relies on the report to take an adverse action

5

against the applicant."). This requirement is particularly important "where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment," so that the consumer has a chance to address the information "in case the report is inaccurate." FTC Advisory Opinion to Rosen, (June 9, 1998), available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-rosen-06-09-98.

18. Before they procure any background check reports, users of consumer reports for employment purposes must certify to the consumer reporting agency that they have complied with the FCRA's disclosure provisions and will comply with its pre-adverse action notice provisions. 15 U.S.C. § 1681b(b)(1).

### Defendant's FCRA Violations Relating to Adverse Action Class

19. The FCRA provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[.]" 15 U.S.C. § 1681b(b)(3)(A)(i).

20. Defendant's Owner, Rebecca Rosario ("Ms. Rosario"), was deposed on August 12, 2020 during discovery in a separate civil action and testified in her official capacity as Full House

6

Marketing's corporate representative. *See Derrick Perez Scott v. Resolve Partners, LLC*, Civ. No. 1:19-cv-1077-WO-JEP (M.D.N.C. Oct. 18, 2019).

21. Ms. Rosario testified that as part of its Pre-Employment Screening Services Agreement with Resolve Partners, Full House Marketing certified that, as an employer and as required by the Fair Credit Reporting Act ("FCRA"), it would provide consumers with the following before taking adverse action in whole or in part based on a consumer report for employment purposes:

- A copy of the consumer report for employment purposes; and

- A copy of the consumer's rights.

22. Despite Full House Marketing's agreement and written certification that it would comply with the FCRA's pre-adverse action notice provisions as outlined in 15 U.S.C. § 1681b(b)(3)(A), in reality, Full House Marketing does not provide consumers with a copy of their consumer report or a copy of the consumer's rights.

23. Full House Marketing admits that it only provides consumers with a copy of their consumer report if requested by the consumer. That is not what the law requires. The report must be provided prior to any adverse action even without a request from the consumer.

7

24. Moreover, Full House Marketing contracts with Resolve Partners to fulfill its pre-adverse action obligations as outlined in in 15 U.S.C. § 1681b(b)(3)(A). But Resolve Partners, pursuant to Full House's instructions, also does not send consumers a copy of their consumer reports.

25. Defendant does not provide consumers with a copy of their consumer report before taking adverse action against them based on the information in such reports. In the instant case, Defendant denied Plaintiff employment on the basis of inaccurate criminal record information contained in Plaintiff's consumer report that was obtained by Defendant; however, Defendant failed to provide Plaintiff with a copy of his consumer report before taking adverse action based in whole or in part on the report.

26. Defendant's practice also runs counter to long-standing regulatory guidance from the FTC. Specifically, 15 U.S.C. § 1681b(b)(3)(A) requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that

8

the consumer be informed of the negative information being communicated about him or her in a consumer report.[1]

27. By failing to provide Plaintiff and other Putative Class members with the information required by 15 U.S.C. § 1681b(b)(3)(A) before taking adverse employment action against them based on the information contained in such reports, Defendant willfully disregarded this unambiguous regulatory guidance as well as the plain language of the statute, in violation of 15 U.S.C. § 1681b(b)(3)(A).

### *Defendant Acted Willfully*

28. Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's guidance

29. Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.*, Civil Action No.

---

[1] Letter from William Haynes, Fed. Trade Comm'n, to A. Michael Rosen, Esq., Senior Vice President and General Counsel, Background America Inc. (June 9, 1998), 1998 WL 34323763 (F.T.C.) at *1, available at: http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-rosen-06-09-98

3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004); (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469 (E.D. Va. 2009) (consent Order providing ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the pre-adverse action notices).

30. Defendant has long been aware of litigation against employers involving the FCRA's provisions governing the use of reports in the employment context.

31. To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take

10

adverse action based in whole or in part on the consumer report. 15 U.S.C. § 1681b(b)(1)(A).

32.     Defendant     knowingly     executed     a     contract     and certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based, in whole or in part, on information contained in a consumer report.

33.     Despite  its  contract  and  certifications,  Defendant knowingly violated 15 U.S.C. § 1681b(b)(3).

34.     Defendant obtained and had available substantial written materials, which apprised it of its duties under the FCRA.

35.     These requirements have been part of the fabric of the FCRA since Congress enacted it. Defendant has had decades by which to become compliant with these requirements, yet it has not done so.

36.     Despite knowledge of these legal obligations, Defendant acted consciously in breaching its known duties and depriving the Plaintiff and putative class members of their rights under the FCRA.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF

37.     In or around March 2019, Mr. Scott applied online for employment as a Leasing Agent with Defendant.

11

38.  As part of the employment application process, Plaintiff authorized Full House to procure a consumer report, more commonly referred to within the employment context as a background check.

39.  On March 15, 2019, Resolve Partners purportedly sent Plaintiff a Pre-Adverse Action notice with a FCRA Summary of Rights disclosure, but failed to include with said notice a copy of Plaintiff's consumer report as required by the FCRA, 15 U.S.C. § 1681b(b)(3)(A)(i).

40.  Mr. Scott was excited about the prospect of working for Full House but his excitement was suddenly and unexpectedly stymied when, on or after March 27, 2019, Mr. Scott received a text message from Laurisa Brooks ("Ms. Brooks"), Talent Recruiter at Full House, stating the following:

> Hi Derrick – Thank you for applying to Full House Mktg. Unfortunately your background at this time does not meet our guidelines for employment. Thank you for your time and interest. Full House Marketing.

41.  Mr. Scott takes great pride in his good name and stellar background, as he's never been charged with a crime or otherwise been in trouble with the law, so he could not imagine why his background would not meet Full House's guidelines for employment.

42.  On or about March 27, 2019, Defendant took adverse action against Plaintiff based in whole or in part on the contents of his consumer report, which was prepared by non-party Resolve Partners.

12

43.    Before taking adverse action against Plaintiff based, in whole or in part, on the contents of his consumer report, Defendant admittedly failed to provide Plaintiff with a copy of his consumer report.

44.    Defendant violated 15 U.S.C. § 1681b(b)(3)(A) when it took adverse employment action against Plaintiff and other Putative Class members based on information in their consumer reports without first providing Plaintiff and other affected class members with a copy of their consumer reports and giving them a reasonable opportunity to respond to the information in the report and engage in a discussion with Defendant.

45.    As Plaintiff would eventually come to learn over five weeks later, the Background Screening Report Resolve Partners provided to Full House contained five pages of information, including six grossly inaccurate and stigmatizing felony and misdemeanor charges from Saint Mary's County, Maryland, belonging to an unrelated consumer, Derrick *Lee* Scott. The seriousness of the criminal records, alone, precluded Plaintiff from moving forward with Full House's new employee onboarding process.

## CLASS ACTION ALLEGATIONS

46.    In Count I, Plaintiff asserts a FCRA claim under 15 U.S.C. § 1681b(b)(3)(A) on behalf of an "Adverse Action Class," consisting of:

13

**All Full House Marketing, Inc. employees and prospective employees in the United States against whom adverse employment action was taken by Full House Marketing, based, in whole or in part, on information contained in a consumer report obtained within five years of the filing of this complaint through the date of final judgment in this action, and who were not provided with a copy of their consumer report prior to taking adverse action.**

47.     Numerosity:     The members of the Putative Class are so numerous that joinder of all Class members is impracticable. Defendant regularly obtains and uses information in consumer reports to conduct background checks on employees and prospective employees and frequently relies on such information, in whole or in part, in the hiring process. Plaintiff is informed and believes that during the relevant time period, hundreds of Defendant's employees and prospective employees satisfy the definition of the Putative Class.

48.     Typicality:     Plaintiff's claims are typical of those of the members of the Putative Class. Defendant typically uses consumer reports to conduct background checks on employees and prospective employees. The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members and Defendant treated Plaintiff consistent with other Putative Class members in accordance with its standard, uniform policies and procedures.

14

49.   Adequacy: Plaintiff is a member of and will fairly and adequately protect the interests of the Putative Class and has retained counsel experienced in complex class action litigation.

50.   Commonality:  Common questions of law and fact exist as to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class. These common questions include, but are not limited to:

- Whether Defendant uses consumer report information to conduct background checks on employees and prospective employees;

- Whether Defendant's background check practices and/or procedures comply with the FCRA;

- Whether Defendant violated the FCRA by taking adverse action against Plaintiff and other members of the Adverse Action Class that may have been based on information in a consumer report, without first furnishing a copy of the report to the affected persons;

- Whether Defendant's violations of the FCRA were willful; and

- The proper measure of damages.

51.   Class certification is also appropriate because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct, which is described in this Class Action Complaint, stems from common and uniform policies and

15

practices, resulting in common violations of the FCRA. Members of the Putative Class do not have an interest in pursuing separate actions against the Defendant, as the amount of each Class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single action, brought in a single forum. The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

52. The names and addresses of the Putative Class members are readily available from Defendant's records.

## CLAIM FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681b(b)(3)(A)(i)
**Failure to Provide Notice with a Copy of Consumer Report Before Taking Adverse Action**
**(On Behalf of Plaintiff and the Adverse Action Class)**

53. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-52, above.

16

54.     Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

55.     Defendant violated the FCRA by failing to provide Plaintiff and other Adverse Action Class members with a copy of the consumer report that was used to take adverse employment action against them, before taking such adverse action. *See* 15 U.S.C. § 1681b(b)(3)(A)(i).

56.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A)(i). Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the guidance of the Federal Trade Commission. Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA. Any reasonable employer knowns of the existence of these FCRA mandates or can easily discovery their substance.

57.     Moreover, at the time Defendant failed to comply with 15 U.S.C. § 1681b(b)(3)(A) a plethora of FTC opinion and case law existed, including a case styled *Miller v. Johnson & Johnson*, 80 F. Supp. 3d 1284 (M.D. Fla. 2015) (granting summary judgment as to liability to plaintiff on 15 U.S.C. § 1681b(b)(3)(A) claim where

17

plaintiff had no opportunity to review a copy of the report and dispute the inaccurate criminal information contained within his background report before J & J rescinded the offer of employment). *Miller* addressed the failure to include a copy of the report with adverse action notices as mandated by the FCRA, which, apparently, Defendant intentionally or recklessly disregarded.

### Plaintiff's First Concrete Injury: Informational Injury

58. As to the § 1681b(b)(3)(A) claim, Plaintiff suffered a concrete informational injury because Defendant failed to provide Plaintiff with information to which he was entitled to by statute, namely a copy of his consumer report with an adverse action notice, before Defendant took adverse action against him, based in whole or in part on the contents of his consumer report. This notice should have included all information proscribed by § 1681b(b)(3)(A), including (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under § 1681g(c)(3) of the FCRA.

59. Through the FCRA, Congress has created a new right—the right to receive pre-adverse action notice as set out in the FCRA—and a new injury—not receiving said notice. The Plaintiff's "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

18

***Plaintiff's Second Concrete Injury: Inability to Learn of the
Contents of His Consumer Report and Dispute Any Inaccurate
Information Contained Therein***

60.   Separately from the informational injury suffered, Plaintiff and Class members have Article III standing to pursue claims for violations of § 1681b(b)(3)(A) because Defendant's failure to provide timely notice and a copy of their consumer report deprived Plaintiff and Class members of the opportunity to learn of the contents of their consumer reports, including any criminal history reported, and dispute any inaccurate information contained therein before Defendant denied their employment application, rescinded their employment offer, and/or terminated their employment. *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 638 (E.D. Va. 2016).

61.   With these two recognized injuries directly traceable to Defendant's failure to timely provide the notices and copies of reports required by § 1681b(b)(3)(A), Plaintiff unquestionably has established Article III standing.

62.   Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to actual damages under 15 U.S.C. § 1681o(a)(1), and punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

63.     Plaintiff   and   the   Adverse   Action   Class   are   further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, on behalf of himself and the Putative Class, prays for relief as follows:

a)   Determining   that   this   action   may   proceed   as   a   class action;

b)   Designating   Plaintiff   as   class   representative   and designating   Plaintiff's   counsel   as   counsel   for   the Putative Class;

c)   Issuing   proper   notice   to   the   Putative   Class   at Defendant's expense;

d)   Declaring   that   Defendant   committed   multiple,   separate violations of the FCRA;

e)   Declaring   that   Defendant   acted   willfully   in   deliberate or   reckless   disregard   of   Plaintiff's   rights   and   its obligations under the FCRA;

f)   Awarding actual and statutory damages as provided by the FCRA,   including   punitive   damages,   to   members   of   the Putative Class;

g)   Awarding   reasonable   attorneys'   fees   and   costs   as provided by the FCRA; and

h)   Granting other and further relief, in law or equity, as
     this Court may deem appropriate and just.

### DEMAND FOR JURY TRIAL

64.   Plaintiff and the Putative Class demand a trial by jury.


Dated: June 25, 2021

/s/ Hans W. Lodge
BERGER MONTAGUE, PC
Hans W. Lodge, MN Bar No. 397012
*Admitted Pro Hac Vice*
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 607-7794
Fax: (612) 584-4470
Email: hlodge@bm.net

Asa C. Edwards, NC Bar No. 46000
MAGINNIS HOWARD
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: (919) 526-0450
Fax: (919) 882-8763
Email: aedwards@maginnishoward.com

*ATTORNEYS FOR PLAINTIFF*

21