# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION

| | |
|---|---|
| DERRICK PEREZ SCOTT,<br><br>Plaintiff,<br>vs.<br>FULL HOUSE MARKETING, INC.,<br><br>Defendant. | CASE NO.: 1:21-cv-00242-WO-JLW<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

Plaintiff, Derrick Perez Scott ("Plaintiff" or "Mr. Scott"), by and through his attorneys, brings the following Second Amended Complaint against Defendant, Full House Marketing, Inc. ("Defendant" or "Full House Marketing"), for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

## PRELIMINARY STATEMENT

1. Defendant is an employment agency and single source of marketing, training, and staffing support for Residential Property Management organizations, and operates throughout North and South Carolina and Michigan.

2. Defendant routinely obtains and uses information in consumer reports to conduct background checks on prospective

1

employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for taking adverse employment action, such as failure to hire, failure to promote, and termination.

3. One of the key protections the FCRA provides consumers in the employment context is the requirement that employers—*before* they use a consumer report background check to make an adverse employment decision—provide consumers with a copy of the report and a written summary of their FCRA rights.

4. Defendant violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiff without first providing Plaintiff with a copy of the pertinent consumer report, and without providing Plaintiff a reasonable opportunity to respond to the inaccurate criminal record information in the report and discuss it with Defendant and/or dispute it with the consumer reporting agency who prepared the report.

5. Unbeknownst to Plaintiff, the consumer report that Defendant used to take adverse employment action against him contained six (6) grossly inaccurate and stigmatizing felony and misdemeanor criminal records that do not belong to

2

Plaintiff, which precluded Plaintiff from being hired by Defendant.

6. Defendant's failure to provide Plaintiff with a copy of his consumer report, as required by 15 U.S.C. § 1681b(b)(3)(A), harmed Plaintiff because he was not provided with an opportunity to view or dispute the inaccurate contents of his employment background check report prior to being denied employment by Defendant.

7. Plaintiff was sufficiently qualified for the employment position with Defendant and would have been hired but for the inaccurate criminal records reported in his employment background check report.

8. As a result of Defendant's failure to comply with the FCRA, Plaintiff seeks actual damages, including wage loss and emotional distress, punitive damages, costs and attorneys' fees, and other appropriate relief under the FCRA.

## **THE PARTIES**

9. Plaintiff, Derrick Perez Scott ("Plaintiff"), is an individual person who applied for multiple employment positions with Defendant in this District and at all times pertinent hereto resided in the City of Rock Hill, York County, South Carolina.

3

10. Defendant Full House Marketing, Inc. ("Defendant") is a corporation with a principal place of business located at 1005 Slater Road, #220, Durham, North Carolina 27703, and user of consumer reports as contemplated by the FCRA, 15 U.S.C. § 1681b.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant conducts business, maintains offices, performs services, and resides in this District.

## FACTUAL ALLEGATIONS REGARDING DEFENDANT'S ILLEGAL BUSINESS PRACTICES

### *Background Checks*

13. Defendant conducts background checks on many of its job applicants as part of a standard recruitment screening process.

14. Defendant does not perform these background checks in-house. Rather, Defendant relies on a third-party consumer reporting agency, Resolve Partners, LLC ("Resolve Partners"), to obtain this information and report it to Defendant in the

4

form of a Background Screening Report. These Background Screening Reports constitute "consumer reports" for purposes of the FCRA.

### *The FCRA's Protections for Job Seekers*

15. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one prepared in Mr. Scott's name.

16. The FCRA provides a number of protections for job applicants who are subjected to background checks.

17. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

18. The FCRA requires that any person who uses a report for employment purposes must:

> [B]efore taking any adverse action based in whole or in part on the report. . . provide to the consumer to whom the report relates—
>
>   a. a copy of the report; and
>
>   b. a description in writing of the rights of the consumer under this subchapter, as prescribed by the [Consumer Financial Protection] Bureau under section 1681g(c)(3).

15 U.S.C. § 1681b(b)(3).

19. The pre-adverse action notification provision protects job applicants and employees by "provid[ing] the consumer with knowledge of information the [consumer reporting agency] has reported about him or her that is going to result in adverse action in an employment context, affording the individual an opportunity to respond to it." FTC Advisory Opinion to Leathers (Sept. 9, 1998), available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98; *see also Moore v. Rite Aid Hdqtrs Corp,* No. CIV 13-1515, 2015 WL 3444227, at *4 (E.D. Pa. May 29, 2015) *citing Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) ("Section 1681b(b)(3)(A) thus requires an employer to provide job applicants with their background report, summary of rights, and a "real opportunity" to contest the contents of the background report before the employer relies on the report to take an adverse action against the applicant."). This requirement is particularly important "where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment," so that the consumer has a chance to address the information "in case the report is inaccurate." FTC Advisory Opinion to Rosen,

6

(June 9, 1998), available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-rosen-06-09-98.

20. Before they procure any background check reports, users of consumer reports for employment purposes must certify to the consumer reporting agency that they have complied with the FCRA's disclosure provisions and will comply with its pre-adverse action notice provisions. 15 U.S.C. § 1681b(b)(1).

### *Defendant's FCRA Violations Relating to Plaintiff*

21. The FCRA provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[.]" 15 U.S.C. § 1681b(b)(3)(A)(i).

22. Defendant's Owner, Rebecca Rosario ("Ms. Rosario"), was deposed on August 12, 2020 during discovery in a separate civil action and testified in her official capacity as Full House Marketing's corporate representative. *See Derrick Perez Scott v. Resolve Partners, LLC*, Civ. No. 1:19-cv-1077-WO-JEP (M.D.N.C. Oct. 18, 2019).

7

23. Ms. Rosario testified that as part of its Pre-Employment Screening Services Agreement with Resolve Partners, Full House Marketing certified that, as an employer and as required by the Fair Credit Reporting Act ("FCRA"), it would provide consumers with the following before taking adverse action in whole or in part based on a consumer report for employment purposes:

- A copy of the consumer report for employment purposes; and

- A copy of the consumer's rights.

24. Despite Full House Marketing's agreement and written certification that it would comply with the FCRA's pre-adverse action notice provisions as outlined in 15 U.S.C. § 1681b(b)(3)(A), in reality, Full House Marketing does not provide consumers with a copy of their consumer report or a copy of the consumer's rights.

25. Full House Marketing admits that it only provides consumers with a copy of their consumer report if requested by the consumer. That is not what the law requires. The report must be provided prior to any adverse action even without a request from the consumer.

8

26. Moreover, Full House Marketing contracts with Resolve Partners to fulfill its pre-adverse action obligations as outlined in in 15 U.S.C. § 1681b(b)(3)(A). But Resolve Partners, pursuant to Full House's instructions, also does not send consumers a copy of their consumer reports.

27. Defendant does not provide consumers with a copy of their consumer report before taking adverse action against them based on the information in such reports. In the instant case, Defendant denied Plaintiff employment on the basis of inaccurate criminal record information contained in Plaintiff's consumer report that was obtained by Defendant; however, Defendant failed to provide Plaintiff with a copy of his consumer report before taking adverse action based in whole or in part on the report.

28. Defendant's practice also runs counter to long-standing regulatory guidance from the FTC. Specifically, 15 U.S.C. § 1681b(b)(3)(A) requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or

9

lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information being communicated about him or her in a consumer report.[1]

29. By failing to provide Plaintiff with the information required by 15 U.S.C. § 1681b(b)(3)(A) before taking adverse employment action against Plaintiff based on the information contained in such reports, Defendant willfully disregarded this unambiguous regulatory guidance as well as the plain language of the statute, in violation of 15 U.S.C. § 1681b(b)(3)(A).

**FACTUAL ALLEGATIONS RELATED TO MR. SCOTT**

30. In or around March 2019, Mr. Scott applied online for employment as a Leasing Agent with Defendant.

31. Plaintiff was qualified to work for Defendant as a Leasing Agent because he had prior experience as a leasing agent and his background met all of Defendant's Criminal Screening Guidelines.

---

[1] Letter from William Haynes, Fed. Trade Comm'n, to A. Michael Rosen, Esq., Senior Vice President and General Counsel, Background America Inc. (June 9, 1998), 1998 WL 34323763 (F.T.C.) at *1, available at: http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-rosen-06-09-98

10

32. As part of the employment application process, Plaintiff authorized Full House to procure a consumer report, more commonly referred to within the employment context as a background check ("Background Screening Report").

33. On March 15, 2019, Resolve Partners purportedly sent Plaintiff a Pre-Adverse Action notice with a FCRA Summary of Rights disclosure, but failed to include a copy of Plaintiff's consumer report as required by the FCRA, 15 U.S.C. § 1681b(b)(3)(A)(i).

34. Mr. Scott was excited about the prospect of working for Full House but his excitement was suddenly and unexpectedly stymied when, on or after March 27, 2019, Mr. Scott received a text message from Laurisa Brooks ("Ms. Brooks"), Talent Recruiter at Full House, stating the following:

> Hi Derrick – Thank you for applying to Full House Mktg. Unfortunately your background at this time does not meet our guidelines for employment. Thank you for your time and interest. Full House Marketing.

35. Mr. Scott takes great pride in his good name and stellar background, as he's never been charged with a crime or otherwise been in trouble with the law, so he could not

11

imagine why his background would not meet Full House's guidelines for employment.

36. On or about March 27, 2019, Defendant took adverse action against Plaintiff based in whole or in part on the contents of his Background Screening Report, which was prepared by non-party Resolve Partners. Defendant's adverse action consisted of rejecting Plaintiff's employment application because his criminal record history, as inaccurately reflected in Resolve Partner's Background Screening Report, failed to meet Defendant's Criminal Screening Guidelines.

37. Before taking adverse action against Plaintiff based, in whole or in part, on the contents of his Background Screening Report, Defendant admittedly failed to provide Plaintiff with a copy of his Background Screening Report.

38. Plaintiff was harmed by Defendant's failure to provide him with a copy of his Background Screening Report because had Defendant done so, Plaintiff would have immediately discovered the inaccurate criminal record information and would have been able to dispute it with Resolve Partners and correct it prior to Defendant taking

adverse action against him based on the contents of his Background Screening Report.

39. Defendant violated 15 U.S.C. § 1681b(b)(3)(A) when it took adverse employment action against Plaintiff based on information in his Background Screening Report without first providing Plaintiff with a copy of his report and giving Plaintiff a reasonable opportunity to respond to the information in the report and engage in a discussion with Defendant.

40. As Plaintiff would eventually come to learn over five weeks later, after applying for employment with Defendant and being rejected for a second time, the Background Screening Report Resolve Partners provided to Full House contained five pages of information, including six (6) grossly inaccurate and stigmatizing felony and misdemeanor charges from Saint Mary's County, Maryland, belonging to an unrelated consumer, Derrick *Lee* Scott. The seriousness of the inaccurate criminal records precluded Plaintiff from moving forward with Full House's new employee onboarding process.

41. As a result of Defendant's violation of the FCRA, Plaintiff lost an employment opportunity and suffered actual

damages, including wage loss and emotional distress, including embarrassment, frustration, and humiliation.

### *Defendant Acted Willfully*

42. Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's guidance

43. Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.*, Civil Action No. 3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any

14

inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004); (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469 (E.D. Va. 2009) (consent Order providing ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the pre-adverse action notices).

44. Defendant has long been aware of litigation against employers involving the FCRA's provisions governing the use of reports in the employment context.

45. To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report. 15 U.S.C. § 1681b(b)(1)(A).

46. Defendant knowingly executed a contract and certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based, in whole or in part, on information contained in a consumer report.

47. Despite its contract and certifications, Defendant knowingly violated 15 U.S.C. § 1681b(b)(3).

48. Defendant obtained and had available substantial written materials, which apprised it of its duties under the FCRA.

49. These requirements have been part of the fabric of the FCRA since Congress enacted it. Defendant has had decades by which to become compliant with these requirements, yet it has not done so.

50. Despite knowledge of these legal obligations, Defendant acted consciously in breaching its known duties and depriving the Plaintiff of his rights under the FCRA.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681b(b)(3)(A)(i)
### Failure to Provide Notice with a Copy of Consumer Report Before Taking Adverse Action

51. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-50, above.

52. Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff.

53. Defendant violated the FCRA by failing to provide Plaintiff with a copy of the consumer report that was used to take adverse employment action against him, before taking such adverse action. *See* 15 U.S.C. § 1681b(b)(3)(A)(i).

54. The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681b(b)(3)(A)(i). Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the guidance of the Federal Trade Commission. Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA. Any reasonable employer knowns of the existence of these FCRA mandates or can easily discovery their substance.

55. Moreover, at the time Defendant failed to comply with 15 U.S.C. § 1681b(b)(3)(A) a plethora of FTC opinion and case law existed, including a case styled *Miller v. Johnson & Johnson*, 80 F. Supp. 3d 1284 (M.D. Fla. 2015) (granting

17

summary judgment as to liability to plaintiff on 15 U.S.C. § 1681b(b)(3)(A) claim where plaintiff had no opportunity to review a copy of the report and dispute the inaccurate criminal information contained within his background report before J & J rescinded the offer of employment). *Miller* addressed the failure to include a copy of the report with adverse action notices as mandated by the FCRA, which, apparently, Defendant intentionally or recklessly disregarded.

56. Plaintiff is further entitled to recover his costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a) Declaring that Defendant committed a negligent violation of the FCRA;

b) Declaring that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

18

c) Awarding actual and/or statutory damages as provided by the FCRA, including punitive damages, to Plaintiff;

d) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

e) Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

57. Plaintiff demands a trial by jury.

Dated: September 16, 2021

/s/ *Hans W. Lodge*
Hans W. Lodge, MN Bar No. 397012
BERGER MONTAGUE
*Admitted Pro Hac Vice*
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 607-7794
Fax: (612) 584-4470
Email: hlodge@bm.net

Asa C. Edwards, NC Bar No. 46000
MAGINNIS HOWARD
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: (919) 526-0450
Fax: (919) 882-8763
aedwards@maginnishoward.com

*ATTORNEYS FOR PLAINTIFF*