IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DERRICK PEREZ SCOTT,            )
                                )
          Plaintiff,            )
                                )
     v.                         )        1:21-cv-242
                                )
FULL HOUSE MARKETING, INC.,     )
                                )
          Defendant.            )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Derrick Perez Scott ("Plaintiff") alleges one claim against Full House Marketing, Inc. ("Defendant") for willful violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(3)(A), or, in the alternative, negligent violation of 15 U.S.C. § 1681b(b)(3)(A). (Doc. 23.) Defendant moves for summary judgment, (Doc. 51), and moves for Rule 11 sanctions against Plaintiff and his attorneys, (Doc. 53). Plaintiff moves for partial summary judgment on his claim that Defendant negligently violated the FCRA. (Doc. 55.) These motions, (Docs. 51, 53, 55), are ripe for disposition. For the reasons set forth herein, this court will deny both motions for summary judgment and Defendant's motion for sanctions.

# I.  **FACTUAL BACKGROUND**

When considering cross motions for summary judgment, "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation and internal quotation marks omitted). The following facts, except where noted, are undisputed.

Defendant is an employment agency that offers marketing, training, and staffing support for residential property management organizations. (Ex. 1, Declaration of Rebecca Rosario ("Rosario Decl.") (Doc. 51-1) ¶ 3.)[1] As part of its hiring process, Defendant uses background checks, or "consumer reports." (See id. ¶ 14.)

Employers who use consumer reports for employment purposes must comply with several requirements under the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. §§ 1681a, 1681b. Relevant to this case, an employer must comply with the pre-adverse action notice requirement. 15 U.S.C. § 1681b(b)(3). "[B]efore taking any adverse action based in whole or in part on the report," an

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

employer must "provide to the consumer to whom the report relates -- (i) a copy of the report; and (ii) a description in writing of the rights of the consumer." Id. § 1681b(b)(3)(A).

Defendant retained a third-party consumer reporting agency, Resolve Partners, LLC ("Resolve"), to prepare consumer reports and send pre-adverse action letters to applicants. (Rosario Decl. (Doc. 51-1) ¶ 14.)

Plaintiff initially applied for employment with Defendant in January 2019, but did not hear back. (Ex. A, First Deposition of Derrick Perez Scott ("Scott Dep. 1"), Scott v. Resolve Partners, LLC, No. 19-cv-1077,(M.D.N.C.), ECF No. 105-1 at 44—45.)[2] Plaintiff applied again for a job with Defendant as a leasing agent on March 15, 2019. (Rosario Decl. (Doc. 51-1) ¶ 6; Ex. 4, Second Deposition of Derrick Perez Scott ("Scott Dep. 2") (Doc. 51-4) at 13.) Plaintiff authorized Defendant to procure a consumer report for hiring purposes, which included a criminal background check. (Scott Dep. 2 (Doc. 51-4) at 90-91.) Resolve prepared an employment report which contained inaccurate information about Plaintiff, namely that he had been previously charged with three criminal offenses. (Ex. A, 30(b)(6) Deposition of Rebecca Rosario on Behalf of Full House Marketing,

---

[2] Case No. 19-cv-1077 and the present case were consolidated for purposes of discovery and trial. See infra Part II.

- 3 -

Inc. ("Rosario Dep.") (Doc. 61-2) at 31–32.) In reality, these charges were associated with a Derrick Lee Scott. (Id.) On March 27, 2019, Resolve completed Plaintiff's report and shared it with Defendant. (Id. at 49.) Defendant did not hire Plaintiff in March. (Scott Dep. 2 (Doc. 51-4) at 44; Rosario Dep. (Doc. 61-2) at 14.)

Plaintiff applied again for employment with Defendant on May 5, 2019. (Rosario Dep. (Doc. 61-2) at 15.) In reviewing Plaintiff's May application, Defendant used the same inaccurate report from March. (Ex. E, Deposition of Simone Salazar ("Salazar Dep."), Scott v. Resolve Partners, LLC, No. 19-cv-1077, (M.D.N.C.) ECF No. 105-5 at 237.) On May 6, 2019, one of Defendant's employees, Laurisa Brooks, who had been in communication with Plaintiff about his application, texted Plaintiff that his background was not within Defendant's guidelines and terminated the hiring process.[3] (Scott Dep. 2 (Doc. 51-4) at 219—20.) Plaintiff replied, "Can you tell me why?" and Defendant instructed him to direct any questions to Resolve. (Ex. F ("Text Message") (Doc. 55-7) at 2.) That same day, Plaintiff contacted Resolve, and Resolve sent Plaintiff an

---

[3] The parties dispute whether Brooks sent Plaintiff an identical text message in March. However, as explained below, this issue is not material for purposes of summary judgment. See infra Section I.A.2.

email with a copy of his inaccurate consumer report. (Ex. G ("May 6, 2019 Letter") (Doc. 55-8) at 2, 6-12.) On May 7, 2019, Plaintiff contacted Resolve to dispute his report. (Salazar Dep. (Doc. 105-5) at 217.) Resolve removed the criminal charges from Plaintiff's report, and on May 31, 2019, Resolve emailed Plaintiff a copy of his corrected report. (Id. at 223.)

There is conflicting evidence as to whether Defendant would have hired Plaintiff if his consumer report did not contain the inaccurate criminal offenses. Defendant's representative initially testified that she "felt confident in plaintiff before requesting the background check." (Rosario Dep. (Doc. 61-2) at 46.) However, it was subsequently revealed that Plaintiff included false statements on the resume that he included as part of his application. (Scott Dep. 2 (Doc. 51-4) at 18, 23.) Defendant's representative stated in a declaration that if Defendant "had learned that Plaintiff had lied on his job application, [Defendant] would have stopped considering his application immediately." (Rosario Decl. (Doc. 51-1) ¶ 12.)

It is not disputed that Plaintiff received a copy of his consumer report in May. (See Pl.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. Re. Def. Full House Marketing, Inc.'s Liability as to Count 1 of the Second Am. Compl. ("Pl.'s Br.") (Doc. 56) at 15.) It is disputed whether Defendant, or Resolve,

acting on behalf of Defendant, sent Plaintiff a copy of his consumer report in March.

There are multiple relevant documents in the record. The first is a letter dated March 27, 2019, from Resolve to Plaintiff, titled "Notice to Consumer of Request of Consumer Report for Employment Purposes." (Ex. B ("Contemporaneous Notice") (Doc. 51-1) at 8; Ex. I, Decl. of Hans W. Lodge (Doc. 55-10) at 2.) The Contemporaneous Notice informed Plaintiff that Defendant requested a consumer report for employment purposes. (Salazar Dep. (Doc. 105-5) at 158–59.)

The second document is attached to Defendant's summary judgment motion. It is an undated[4] "Pre-Adverse Action Letter," from Defendant to Plaintiff. (Ex. C ("Pre-Adverse Action Letter") (Doc. 51-1) at 10.) The letter states:

> We are writing to inform you that in evaluating your application for employment we have received the enclosed consumer report. This notification is provided because we may make an adverse decision that may be based, in whole or part, on this report. . . . A summary of your rights as a consumer is enclosed.

(Id.)

The third document is a letter dated May 6, 2019, sent to Plaintiff, after Plaintiff requested a copy of his consumer

_____

[4] Rosario states in her declaration that the Pre-Adverse Action Letter was sent to Plaintiff the same day as the Contemporaneous Notice. (Rosario Decl. (Doc. 51-5) ¶¶ 17, 19.) Plaintiff disputes this.

- 6 -

report. The May 6, 2019 Letter states: "Attached is a copy of your consumer report as you requested. Also attached is a summary of your rights under the Fair Credit Reporting Act." (May 6, 2019 Letter (Doc. 55-8) at 2.)

Another document is Resolve's internal report on Plaintiff. (Ex. B ("Internal Report") (Doc. 51-3) at 7–10.) Resolve uses a third-party software, Tazworks, to generate consumer reports. (Salazar Dep. (Doc. 105-5) at 136–37.) Tazworks also allows Resolve to send notifications to consumers "relating to the consumer's background check." (Ex. 2, Decl. of David Tanner ("Tanner Decl.") (Doc. 51-2) ¶ 4.) The Internal Report reflects these notifications. (Ex. 3, Decl. of Michelle Bondurant ("Bondurant Decl.") (Doc. 51-3) ¶ 6.)

With its motion, Defendant attached a summary of rights and a copy of Plaintiff's consumer report to the Pre-Adverse Action Letter. (See Pre-Adverse Action Letter (Doc. 51-1) at 10–18.) Plaintiff attached a summary of rights and a copy of Plaintiff's consumer report to the May 6, 2019 Letter. (See May 6, 2019 Letter (Doc. 55-8).) Plaintiff argues that May 6, 2019, was the first time Plaintiff was provided a copy of his consumer report. (Pl.'s Br. (Doc. 56) at 15.) Defendant argues Plaintiff's consumer report was attached to the Pre-Adverse Action Letter sent March 27, 2019. (Mem. in Supp. of Mot. for Summ. J.

("Def.'s Br.") (Doc. 52) at 11–13.) Plaintiff argues in turn that the Pre-Adverse Action Letter "purportedly emailed to Plaintiff in March 2019 did not include a copy of Plaintiff's consumer report." (Pl.'s Br. (Doc. 56) at 21.)

A. **Factual Disputes**

The parties' motions for summary judgment revolve around two disputed facts: (1) whether a consumer report was sent to Plaintiff in March; and (2) whether Defendant's employee, Laurisa Brooks, sent a text message to Plaintiff in March telling him he did not pass the background check.

1. **Evidence of the Consumer Report**

Defendant points to the following evidence in support of its argument that Plaintiff's consumer report was sent to him in March.[5]

Rebecca Rosario ("Rosario") is the President and owner of Full House. (Rosario Decl. (Doc. 51-1) ¶ 2; Rosario Dep. (Doc. 61-2) at 5.) She made the following statements in a declaration dated September 8, 2022:

> 16. Resolve prepared and sent a pre-adverse action letter to Plaintiff and billed [Defendant] for doing so.
> 17. On March 27, 2019, Resolve sent a letter called a "Contemporaneous Notice" via email to

---

[5] Both Plaintiff and Defendant lodge numerous evidentiary objections as to whether this court may consider certain evidence on their respective motions for summary judgment. Those objections will be addressed infra Section III.B.

Plaintiff Derrick Scott. A copy of this letter is attached as Exhibit B.

18. A "pre-adverse action" letter was also sent to Plaintiff on the same day. A copy of the pre-adverse action letter is attached as Exhibit C.

19. That pre-adverse action letter contained a copy of the criminal background report reviewed by [Defendant] and a copy of the Statement of Rights prepared by the Consumer Financial Protection Bureau.

(Rosario Decl. (Doc. 51-1) ¶¶ 16–19.)

David Tanner, a representative of Tazworks, stated in a declaration:

4. Through the Tazworks platform, consumer reporting agencies (CRAs) who have license versions of the software, like Resolve, can send certain notifications to consumers relating to the consumer's background check. These notifications may include a copy of a consumer report, notifications from the consumer reporting agency itself, or communications on behalf of the employer end user.

. . . .

6. The software also has sample communications (that can be customized by a CRA or its client) to notify a consumer that an employer is considering taking adverse action based in whole or in part on a consumer report. This communication is generally referred to as a Pre-Adverse Action with SOR, and as a default includes a copy of the consumer's consumer report as well as a document entitled, "A Summary of Your Rights Under the Fair Credit Reporting Act," ("Summary of Rights") prepared by the Consumer Financial Protection Bureau.

7. I do not know whether Resolve ever changed the default settings to include a copy of the candidate's consumer report and Summary of Rights in its licensed version of the software.

(Tanner Decl. (Doc. 51-2) ¶¶ 4, 6–7.)

- 9 -

Michelle Bondurant, an executive at Resolve, stated in a declaration:

> 6. A Statement of Rights was also sent to Plaintiff on March 27, 2019, along with a Pre-Adverse Action letter. Resolve Partners' internal report for Plaintiff indicates both of those items were sent to Plaintiff (the "Internal Report"). A copy of the internal report is attached as Exhibit B.
> 7. In the Pre-Adverse Action letter, the noted enclosures state that a "Consumer Report" was enclosed.
> 8. The Internal Report has five entries on March 27, 2019 and March 28, 2019 that indicate the Pre-Adverse Action letter was sent to and received by Plaintiff.
> 9. The Consumer Report that was noted in the Pre-Adverse Action letter was sent to Plaintiff on March 27, 2019 through use of the Tazworks software. This is reflected by the entries in the Internal Report.

(Bondurant Decl. (Doc. 51-3) ¶¶ 6-9.)

The declarations state the Internal Report shows that Plaintiff was sent a copy of his consumer report on March 27, 2019. In contrast, Plaintiff argues the text of the Internal Report shows a consumer report was not sent in March. (Pl.'s Br. (Doc. 56) at 24.) The Internal Report shows the following entries:

**Client Notes**, Viewable by Client

05-06-2019 11:06 PM MDT:
The Copy of Consumer Report and SOR disclosure was viewed from IP address 67.197.140.58

05-06-2019 2:57 PM MDT:
The Copy of Consumer Report and SOR disclosure was viewed from IP address 172.56.4.103

- 10 -

05-06-2019 2:53 PM MDT:
The Copy of Consumer Report and SOR disclosure was
viewed from IP address 172.56.4.103

05-06-2019 2:53 PM MDT Simone Salazar.
A QuickView™ email for Copy of Consumer Report and SOR
was sent to RICK8PEREZ3@GMAIL.COM.

03-28-2019 1:47 AM MDT:
The Contemporanious Notice - Use for Resolve - No
Consumer Copy disclosure was viewed from IP address
172.56.5.188

03-28-2019 1:46 AM MDT:
The Contemporanious Notice - Use for Resolve - No
Consumer Copy disclosure was viewed from IP address
172.56.5.188

03-27-2019 3:15 PM MDT:
The Pre-Adverse Action with SOR disclosure was viewed
from IP address 172.56.5.138

03-27-2019 7:19 AM MDT Simone Salazar:

A QuickView™ email for Contemporanious
Notice - Use for Resolve - No Consumer Copy was
sent to RICK8PEREZ3@GMAIL.COM.

03-27-2019 7:19 AM MDT Simone Salazar:
A QuickView™ email for Pre-Adverse Action with
SOR was sent to RICK8PEREZ3@GMAIL.COM.

**Report Notes**

10-28-2019 12:26 PM MDT:
Order status changed from complete to archived.

05-06-2019 2:53 PM MDT Simone Salazar:
System attachment uploaded to report: Copy of
Consumer Report and SOR.pdf

03-27-2019 7:19 AM MDT Simone Salazar:
System attachment uploaded to report:
Contemporanious Notice - Use for Resolve - No
Consumer Copy.pdf

- 11 -

03-27-2019 7:19 AM MDT Simone Salazar:
System attachment uploaded to report: Pre-
Adverse Action with SOR.pdf

03-27-2019 7:19 AM MDT Simone Salazar:
Opted out of sending report completed email.

03-27-2019 6:44 AM MDT Simone Salazar:
User manually removed jurisdiction York-South
Carolina.

03-27-2019 6:44 AM MDT Simone Salazar:
User manually removed jurisdiction Chester-South
Carolina.

03-15-2019 8:38 AM MDT Laurisa Brooks:
Order placed as requested by Laurisa Brooks from
IP address 98.26.89.135.

(Internal Report (Doc. 51-3) at 9–10.)

Plaintiff highlights that some of the Internal Report
entries from March state "No Consumer Copy," in contrast to the
entries in May. (Pl.'s Br. (Doc. 56) at 24–26.) Plaintiff argues
that the Internal Report "unequivocally confirm[s] that neither
Resolve nor [Defendant] sent Plaintiff a copy of his report in
March 2019 before taking adverse action." (Id. at 24.) Plaintiff
also highlights that an entry under Report Notes on 03-27-2019
reads: "Opted out of sending report completed email." (Id.
at 13.)

In support, Plaintiff cites to various parts of the
deposition of Rebecca Rosario, which was taken as a

representative of Defendant in the prior consolidated case.[6] (See
id. at 26.) While Rosario admits in part of her testimony that
the Internal Report seems to indicate that no consumer report
was sent to Plaintiff in March, in other testimony she states
that she does not know what the Report means. For example,
referring to the two March 28, 2019 entries, Plaintiff asks:

> Q. [D]o either of those entries indicate that
> Resolve Partners sent a copy of a consumer report
> to — to plaintiff?
> A. I don't know that I'm qualified to answer
> that.

(Rosario Dep. (Doc. 61-2) at 29.) Shortly thereafter, Plaintiff
asks:

> Q. Do you see where it states that, on — "On 5/6/19 at
> 2:53 p.m., Simone Salazar made an entry that says, "A
> quick view e-mail for copy of consumer report and SOR
> was sent to RickAPerez3@Gmail.com"?
> A. Yes.
> Q: What do you understand this to mean?

_____

[6] Plaintiff filed two lawsuits in federal court arising from
the same sets of facts. He first filed a suit against Resolve,
(Derrick Perez Scott v. Resolve Partners, LLC, 1:19-cv-1077,
("Scott I")), and later filed a suit against Defendant, (Derrick
Perez Scott v. Full House Marketing, Inc., 1:21-cv-242,
("Scott II")). Pursuant to Federal Rule of Civil Procedure
42(a), Defendant filed a motion to consolidate Scott I and Scott
II. (Mot. to Consolidate (Doc. 19).) On September 13, 2021, this
court orally granted the motion to consolidate and ordered the
two cases consolidated for the purposes of discovery and trial.
(See Minute Entry and Oral Order entered on 09/13/2021 in Scott
I.) On August 12, 2020, Rosario was deposed in Scott I on behalf
of Full House Marketing, a third-party at the time, pursuant to
Federal Rule of Civil Procedure 30(b)(6). (See Rosario Dep.
(Doc. 61-2) at 6.)

- 13 -

A. Oh boy. I really — let's see, "A quick view e-mail for copy of consumer report."
I don't know what their internal language means, I'd have to speculate on that on —

. . . .

Q. Would it surprise you to learn that Resolve Partners has testified in this case that a copy of the consumer report was not sent to plaintiff in March 2019? Would that surprise you, Ms. Rosario?
A. Looking at this it — it would appear that they didn't, so . . .
Q. But they contracted with you to do so, correct?
A. Yeah. Wow, okay.

. . . .

Q. And it has now come to your attention that Resolve Partners didn't bring — or didn't give a copy of the consumer report to plaintiff in March either, correct?
A: That is correct.

(Id. at 29-30.)

Plaintiff later asks:

Q. According to Exhibit 11 [the Internal Report], is it indicated anywhere in these client notes that a copy of the consumer report was provided to plaintiff prior to May 6th, 2010, yes or no?
A. There's nothing that specifically states a copy of the consumer — the words "a copy of the consumer report" is — is not listed anywhere before that — that time in the notes.
Q. So that would be a "no" to my question?
A. That is correct.

(Id. at 44.)

However, earlier in Rosario's deposition, she testifies a

consumer report was sent to Plaintiff in March:

- 14 -

Q. [T]his adverse, pre-adverse action letter was sent
to Mr. Scott by Resolve Partners on behalf of Full
House Marketing; is that correct?
A. To my knowledge, yes.
Q. Okay. . . . [A] consumer rights notification and
consumer report were included with this pre-adverse
action letter; is that correct?
A. Right.

(Id. at 19.)

Finally, Plaintiff testified in his first deposition that

he never received a copy of his consumer report in March 2019:

Q. Did you receive a copy of a background check report
from Resolve Partners or Full House Marketing in March
of 2019.
A. No. In March I didn't but in May I did.

(Scott Dep. 1 (Doc. 105-1) at 108.) Plaintiff testified in his

second deposition that he never received any email at all from

Resolve or Defendant in March 2019:

Q. [referring to the Internal Report] Okay. Now, if
you go down to the bottom of the list, it says March
27, 2019, at 7:19 a.m. A quick view e-mail for pre-
adverse action with DOR was sent to
rick8perez3@gmail.com.
A. Yeah.
Q. Did you get an e-mail from Resolve on March 27th?
A. No. I never received that e-mail.
Q. All right. Now, you never received it, but do you
have any reason to believe it wasn't sent?
A. Yes. I believed it wasn't sent because I never seen
it. At least not at that time, I didn't. I seen in
May.
Q. Okay. So do you see that if you look at the third
one up, it says at 3:15 p.m. on March 27th, that pre-
adverse action was viewed from an IP address?
A. Yes, I see that.
Q. Do you know why this report would say that somebody
opened the e-mail that was -- first of all, is this
your e-mail address, rick8perez3@gmail.com?

- 15 -

A. Yes, that's right.
Q. And do you know why this report said that someone opened this e-mail that was sent to rickperez3@gmail.com at 3:15 p.m.?
A. Yes, I see that.
Q. But do you know why it says about?
A. I don't know why. I don't know whose IP address that is. Because I've [n]ever seen that e-mail until my lawyer showed it to me, like last week.
Q. Right. But you said you rarely check your spam filter; right?
A. Yes, that's right, because I just -- I didn't think that a job e-mail would go to spam.

. . . .

Q. Okay. So I guess the answer is you don't know whether this e-mail went to the spam filter or not; right?
A. No, I don't think so, no. I don't think it came at all. I don't know what happened.
Q. Right. You don't know what happened; right?
A. Yeah.
Q. Okay. And you don't know what was in it, right, because you never saw it?
A. Right.
Q. Okay. It could have contained your report; right? It could have had your consumer report in it?
A. Yeah, it could have. But I never got it.

(Scott Dep. 2 (Doc. 51-4) at 30—33.)

Neither party cited to the deposition of Simone Salazar in support of their explanation of the Internal Report; however, her testimony is relevant because she was the employee at

- 16 -

Resolve who prepared Plaintiff's consumer report.[7] (Salazar Dep.
(Doc. 105-5) at 72.)

As an initial observation, the entries in the Internal
Report titled "Contemporanious [sic] Notice" would not
necessarily have a consumer report attached to them because the
purpose of the contemporaneous notice was to simply inform
Plaintiff that Defendant requested a consumer report for
employment purposes. (Id. at 159.) Thus, those entries do not
weigh against Defendant's argument that it sent Plaintiff his
consumer report in March.

Additionally, Salazar testified about the meaning of the
03-27-2019 entry under Report Notes that reads: "Opted out of
sending report completed email."

> Q. And then what does it mean where at 7:19 a.m. on
> March 27th, 2019 you — you enter, opted out of sending
> report completed email?
> A. Okay. So what that means is after each portion on
> the report is completed, there's an automatic e-mail
> button on the bottom that automatically e- — e-mails
> the client, hey, this portion's been completed. I just
> opted out of sending that completed against because we
> have a lot of clients that would get upset if they
> received a lot of e-mails about the report. That's the
> only reason that was opted out.

---

[7] This court has discretion to consider other evidence in
the record not cited by the parties pursuant to Fed. R. Civ. P.
56(c)(3) ("The court need consider only the cited materials, but
it may consider other materials in the record."). Salazar's
deposition is on the record in Scott I, which was consolidated
with this case for purposes of discovery and trial. See infra
Part II.

(Id. at 153.) Thus, the fact that Salazar "opted out" of sending an email notifying Plaintiff that his consumer report was completed does not suggest that Salazar "opted out" of sending Plaintiff his consumer report entirely.

Excluding the entries that reflect a notification was viewed from an IP address, the only entries from which to infer that a consumer report was sent in May, but not March are:

**Client Notes**, Viewable by Client

. . . .

05-06-2019 2:53 PM MDT Simone Salazar:
A QuickView™ email for Copy of Consumer Report and SOR was sent to RICK8PEREZ3@GMAIL.COM.

. . . .

03-27-2019 7:19 AM MDT Simone Salazar:
A QuickView™ email for Pre-Adverse Action with SOR was sent to RICK8PEREZ3@GMAIL.COM.

. . . .

Report Notes

. . . .

05-06-2019 2:53 PM MDT Simone Salazar:
System attachment uploaded to report: Copy of Consumer Report and SOR.pdf

. . . .

03-27-2019 7:19 AM MDT Simone Salazar:
System attachment uploaded to report: Pre-Adverse Action with SOR.pdf

(Internal Report (Doc. 51-3) at 9–10.) Salazar testified about
pre-adverse action notices:

> Q. Okay. What's a pre-adverse action notice?
> A. Pre-adverse action notice is letting the applicant
> know, hey, we re- — we received this request that you
> wanted to apply for this job, Resolve's been retained
> to do your credit/criminal report, and it's just
> giving them notification of that.
>
> . . . .
>
> Q. I'm curious. In — does Resolve always send a pre-
> adverse action notice to every consumer or just
> certain consumers?
> A. It's for preemployment to my knowledge.
>
> . . . .
>
> Q. Do you know why pre-adverse action notices are
> sent?
> A. To notify the applicant before — or that their
> information's being accessed, that they're applying
> for this position or this property to let them know.
> And if they don't give consent to that, they have the
> right to stop it.

(Salazar Dep. (Doc. 105-5) at 154–56.) After reviewing the
Internal Report, Plaintiff asked, based on that Report:

> Q. Does that page — are you able to tell me whether
> Derrick Perez Scott received a copy of his Resolve
> consumer report before May 6th, 2019?
> A. Yes.
> Q. When did he receive it?
>
> . . . .
>
> A. . . . So March 28th the consumer report was sent
> two times and it says it was viewed from an IP
> address.
>
> . . . .

- 19 -

Q: Okay. Is the typical — is the standard procedure to
e-mail a copy of the report to the consumer?
A. Yes. Yes.

(Id. at 161-62.)

## 2. **The Text Message**

The parties dispute whether Defendant's employee, Laurisa
Brooks, sent a text message to Plaintiff in March. Defendant
argues the timing of the text message is relevant because the
only way Plaintiff could have found out about the adverse action
taken against him was through an email sent with the consumer
report. (Def.'s Br. (Doc. 52) at 16-18.) Plaintiff argues he
never received the consumer report and found out he was not
hired in March through a text message from Brooks. (Pl.'s Br.
(Doc. 56) at 10.) However, whether or not the text message was
sent to Plaintiff in March is not material for purposes of
summary judgment.

"As to materiality, the substantive law will identify which
facts are material. Only disputes over facts that might affect
the outcome of the suit under the governing law will properly
preclude the entry of summary judgment. Factual disputes that
are irrelevant or unnecessary will not be counted." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Although not necessarily irrelevant, resolving whether a
text message was sent to Plaintiff in March is not material to

- 20 -

the issue of whether Plaintiff's consumer report was sent to him in March. Defendant states: "the only way Plaintiff could have known about any adverse action in March of 2019 was by reading the email that Resolve sent on Full House's behalf on March 27, 2019. Without that email, Plaintiff had no way of knowing that Full House had even reviewed his application for the position, let alone denied him work." (Def.'s Br. (Doc. 52) at 17.)

As an initial matter, there is conflicting evidence in the record as to whether Plaintiff had knowledge, either through text or email, that his application was rejected by Defendant in March. (Compare Scott Dep. 1 (Doc. 105-1) at 46, 89–91 (testifying that Brooks texted him in March) with Scott Dep. 2 (Doc. 51-4) at 45, 51–52 (testifying that he didn't know in March that he had been rejected and found out for the first time in May that he was not hired because of his background), 219–20

(testifying that he never got a text on March 27, 2019 from Brooks, only on May 6, 2019).)[8]

Furthermore, Plaintiff could have learned of the potential adverse action through the Pre-Adverse Action Letter sent in March, even if his consumer report was not attached.

Plaintiff's knowledge or lack of knowledge as to whether Defendant rejected his application in March is not material for purposes of summary judgment on whether Defendant sent him a copy of his consumer report in March.

## II.  PROCEDURAL HISTORY

Plaintiff filed two lawsuits in federal court arising from the same sets of facts. He first filed a complaint against Resolve, (Derrick Perez Scott v. Resolve Partners, LLC, 1:19-cv-

---

[8] In a declaration in support of Plaintiff's response to Defendant's motion for sanctions, filed September 29, 2022, Plaintiff attached an "Errata Sheet" for Plaintiff's second deposition, which was held on July 11, 2022. (Doc. 61-1 at 2.) Plaintiff attempts to substantively change his answers to the deposition through the Errata Sheet. (See id.) Fed. R. Civ. P. 30(e) permits a deponent to correct typographic errors or errors related to incorrect reporting within thirty days of being notified that the transcript is available. Fed. R. Civ. P. 30(e)(1); Estate of Rink by Rink v. VICOF II Trust, No. 20-CV-39, 2022 WL 1445233, at *1 (W.D.N.C. May 6, 2022). This process is not available to substantively contradict or modify the sworn deposition. Estate of Rink, 2022 WL 1445233, at *1. The Errata Sheet here does not appear to comply with the procedures outlined in Rule 30(e) and attempts to substantively change Plaintiff's sworn deposition. Accordingly, this court will not consider it.

1077, ("Scott I")), and later filed a suit against Defendant, (Derrick Perez Scott v. Full House Marketing, Inc., 1:21-cv-242, ("Scott II")). Pursuant to Federal Rule of Civil Procedure 42(a), Defendant filed a motion to consolidate Scott I and Scott II. (Mot. to Consolidate (Doc. 19).) On September 13, 2021, this court orally granted the motion to consolidate and ordered the two cases consolidated for the purposes of discovery and trial. (See Minute Entry and Oral Order entered on 09/13/2021 in Scott I.)

On September 16, 2023, Plaintiff filed a second amended complaint alleging a willful, or, in the alternative, a negligent violation of 15 U.S.C. § 1681b(b)(3)(A). (Second Am. Compl. (Doc. 23).) Defendant filed a motion for summary judgment, (Full House Marketing, Inc.'s Mot. for Summ. J. ("Def.'s Mot.") (Doc. 51)), a brief in support, (Def.'s Br. (Doc. 52)), and a motion for Rule 11 Sanctions, (Mot. for Rule 11 Sanctions ("Sanctions Mot.") (Doc. 53)), with an accompanying brief, (Mem. in Supp. of Mot. for Rule 11 Sanctions ("Sanctions Mem.") (Doc. 54)). Plaintiff moved for partial summary judgment, (Pl.'s Mot. for Partial Summ. J. Re. Def. Full House Marketing, Inc.'s Liability as to Count I of the Second Am. Compl. ("Pl.'s

Mot.") (Doc. 55)), and filed a brief in support, (Pl.'s Br. (Doc. 56.)).[9]

## III. PROCEDURAL AND EVIDENTIARY OBJECTIONS

### A. Timeliness of Plaintiff's Motion for Partial Summary Judgment

Defendant argues that Plaintiff's motion for partial summary judgment should not be considered because it is untimely. (Mem. in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Resp.") (Doc. 65) at 1.) Plaintiff argues that his motion was timely, or, in the alternative, any potential delay in filing was the result of excusable neglect. (Pl.'s Reply to Def. Full House Marketing, Inc.'s Mem. in Opp. to Pl.'s Mot. for Summ. J. ("Pl.'s Reply") (Doc. 68) at 1-3.)

A court may extend the time deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). To determine whether a party's neglect of a deadline is excusable, the court considers "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was

---

[9] On September 28, 2022, Plaintiff filed an "Amended Declaration" in support of his motion for partial summary judgment. (Doc. 60.) Multiple exhibits are attached to the declaration, but these exhibits appear to be the same exhibits attached to Plaintiff's original motion. (See Doc. 55.)

- 24 -

within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).

On June 16, 2022, this court orally granted a motion to amend the scheduling order, allowing an additional sixty days for discovery, with the deadline for filing motions for summary judgment due thirty days after the close of discovery. (Oral Order entered 06/16/2022.) Thus, Plaintiff was required to file his motion for summary judgment by September 14, 2022.[10] Plaintiff filed his motion for summary judgment on September 15, 2022. (See Pl.'s Mot. (Doc. 55) at 2.)

There is no danger of prejudice against Defendant. Defendant has not pointed to any reason why the one-day delay was prejudicial, and both parties have fully briefed the issues. Additionally, there is no indication that Plaintiff acted in bad faith in failing to timely file.

Furthermore, there is a strong preference in the Fourth Circuit for deciding cases on the merits. See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010) ("We have repeatedly expressed a strong

_____

[10] Plaintiff states that the corresponding text order from the June 16 hearing was not entered on the docket until June 17, 2022, and thus he believed the deadline was September 15, 2022. (Pl.'s Reply (Doc. 68) at 2.) Regardless, the court will consider Plaintiff's motion for partial summary judgment.

preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."). Thus, this court will decide Plaintiff's motion for partial summary judgment on the merits.

### B. __Evidentiary Objections__

Both Plaintiff and Defendant lodge numerous evidentiary objections as to whether this court may consider certain evidence on their respective motions for summary judgment. As noted above, Scott I and Scott II were consolidated for purposes of discovery and trial pursuant to Rule 42(a). (See Minute Entry and Oral Order entered on 09/13/2021 in Scott I.) When two cases are consolidated, discovery from one case is available to parties in the other case. See Aldridge v. Goodyear Tire & Rubber Co., Inc., 223 F.3d 263, 266 (4th Cir. 2000) (explaining discovery from prior consolidated actions was available to the current party); Zaya v. Adducci, No. 20-10921, 2020 WL 4816200, at *2 (E.D. Mich. Aug. 19, 2020) ("Pursuant to Federal Rule of Civil Procedure 42, the Court may formally consolidate this case with [case 1], allowing the Court to consider the expert evidence on the record in [case 1] when adjudicating the motion for summary judgment in [this case]."). Thus, as a starting

- 26 -

point, this court assumes discovery from <u>Scott I</u> is available to either party in the current action, <u>Scott II</u>.

"A district court may consider materials at the summary judgment stage that would be inadmissible at trial if the proponent 'shows that it will be possible to put the information into an admissible form.'" <u>Bank of America, N.A. v. Jericho Baptist Church Ministries, Inc.</u>, No. 20-1725, 2022 WL 11112695, *2 (4th Cir. Oct. 19, 2022) (quoting <u>Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.</u>, 790 F.3d 532, 538 (4th Cir. 2015); <u>see also</u> Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

## 1. **Deposition of Rebecca Rosario, on behalf of Defendant, in Scott I**

Plaintiff relies on the deposition of Rebecca Rosario, taken on behalf of Defendant in <u>Scott I</u>, in support of his motion for partial summary judgment and in his response in opposition to Defendant's motion for summary judgment.

Plaintiff relies on the Rosario Deposition to argue that: (1) Defendant admitted that it did not send Plaintiff his consumer report in March; (2) Resolve's client notes from its internal Tazworks software system (Internal Report) establish

- 27 -

that Resolve did not sent Plaintiff a copy of his report; and
(3) Laurisa Brooks, Defendant's employee, sent Plaintiff a text
message in March stating his background did not meet Defendant's
guidelines for employment. (See generally Pl.'s Br. (Doc. 56).)

Defendant responds that the Rosario Deposition from Scott I
cannot be used as evidence in this action pursuant to Federal
Rule of Civil Procedure 32(a)(8). Alternatively, Defendant
argues that Rosario's statements regarding whether Brooks sent
Plaintiff a text in March are inadmissible because Rosario did
not have personal knowledge of the interactions between Brooks
and Plaintiff. (Def.'s Resp. (Doc. 65) at 5-6.) Defendant
further argues that Rosario's commentary about the Internal
Report is inadmissible because she did not have specialized
knowledge about the report. (Id. at 8-9.)

Rosario was deposed in Scott I on behalf of Defendant
pursuant to Federal Rule of Civil Procedure 30(b)(6). (See
Rosario Dep. (Doc. 61-2) at 6.)

Federal Rule of Civil Procedure 30(b)(6) provides:

[a] party may in the party's notice and in a subpoena
name as the deponent a public or private corporation
. . . and describe with reasonable particularity the
matters on which examination is requested. In that
event, the organization so named shall designate one
or more officers, directors, or managing agents, or
other persons who consent to testify on its behalf,
and may set forth, for each person designated, the
matters on which the person will testify. . . . The

- 28 -

>persons so designated shall testify as to matters
>known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6). "If the persons designated by the
corporation do not possess personal knowledge of the matters set
out in the deposition notice, the corporation is obligated to
prepare the designees so that they may give knowledgeable and
binding answers for the corporation." U.S. v. Taylor, 166 F.R.D.
356, 361 (M.D.N.C. 1996). "Moreover, the designee must not only
testify about facts within the corporation's knowledge, but also
its subjective beliefs and opinions. The corporation must
provide its interpretation of documents and events." Id.
(internal citation omitted).

Although Rule 30(b)(6) deposition testimony is sometimes
described as "binding," testimony given in a Rule 30(b)(6)
deposition is evidence, which, like any other deposition
testimony, can be contradicted. See United States v. Tailwind
Sports Corp., 292 F. Supp. 3d 211, 217 (D.D.C. 2017) ("[T]he
broad principle that testimony of a Rule 30(b)(6) representative
binds the designating entity has been expressly repudiated by
every court of appeals to consider the issue.") "[T]he testimony
of the representative designated to speak for the corporation
are admissible against it. But as with any other party
statement, they are not 'binding' in the sense that the
corporate party is forbidden to call the same or another witness

- 29 -

to offer different testimony at trial." Id. (quoting 8A Charles Alan Wight & Arthur R. Miller, Federal Practice and Procedure § 2103 (3d ed. 2017).)

Defendant's 30(b)(6) representative was required to address, among other things:

> 1. The complete process used by or on behalf of Full House Marketing to place a candidate for employment.
>
> . . . .
>
> 5. The complete investigation by or on behalf of Full House Marketing regarding Plaintiff's March 2019 application for employment.
>
> . . . .
>
> 12. Any communication between Plaintiff and Full House Marketing.
> 13. Any communication between Full house Marketing and Defendant Resolve Partners, LLC in 2019 regarding Plaintiff's employment application with Full House Marketing.

(Ex. 1 (Defendant's Notice of Rule 30(b)(6) Deposition) (Doc. 65-1) at 6—7.)

Plaintiff is seeking to admit the Rosario Deposition against Defendant, thus in addition to the Civil Rules governing 30(b)(6) deposition testimony, Federal Rule of Evidence 801(d)(2)(A) is relevant. Federal Rule of Evidence 801(d)(2)(A) provides that an opposing party's statement is not hearsay if offered against an opposing party and made in an individual or representative capacity. Plaintiff is offering the

Rosario Deposition, taken as a representative of Defendant, against Defendant. Personal knowledge or first-hand knowledge is not required for statements offered as opposing party statements. See U.S. v. Goins, 11 F.3d 441, 443–44 (4th Cir. 1993) (holding that the personal knowledge requirement of Rule 602 does not apply to statements of a co-conspirator admissible as non-hearsay under Rule 801(d)(2)(E)); see also 8A Wright, Miller & Marcus, Fed. Prac. & Proc. Civ. § 6782 (3d ed.) ("Personal knowledge is clearly not required for statements offered under Rule 801(d)(2)(A) and (B) — true party statements.").

The combination of Civil Rule 30(b)(6) and Evidence Rule 801(d)(2)(A) gives this court great latitude to consider the Rosario Deposition. This court finds the deposition testimony may be considered for purposes of summary judgment for the reasons that follow.

### a. **Rule 32 Objection**

Defendant argues Rosario's deposition from Scott I may not be used as evidence in this case because, under Federal Rule of

Civil Procedure 32(a)(8),[11] a deposition taken in a prior action may only be used "in a later action involving the <u>same subject matter</u> between the <u>same parties</u>." (Def.'s Resp. (Doc. 65) at 2.) Defendant argues <u>Scott I</u> and <u>Scott II</u> do not involve the same subject matter between the same parties. (<u>Id.</u> at 2-3.) Plaintiff replies that Civil Rule 32(a)(3)[12] applies and permits consideration of Rosario's deposition. (Pl.'s Reply (Doc. 68) at 4-5.)

Noncompliance with Civil Rule 32 will not bar the court's consideration of a deposition on summary judgment. <u>Webb v. Butler</u>, No. 18-CT-3127, 2021 WL 10364882, at *6 (E.D.N.C. Sept. 14, 2021); 8A Wright, Miller & Marcus, Fed. Prac. & Proc. Civ. § 2142 (3d ed.). Rule 32 applies to using depositions in court proceedings. <u>See</u> Fed. R. Civ. P. 32 ("Using Depositions in Court Proceedings."). If a deposition does not comply with the requirements of Rule 32, it may be treated as an affidavit for purposes of summary judgment under Federal Rule of Civil

_____

[11] Rule 32(a)(8) provides: "A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence."

[12] Rule 32(a)(3) provides: "An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."

Procedure 56(c)(4). <u>Butler</u>, 2021 WL 10364882, at *6 ("[W]hile the Fourth Circuit has not addressed this issue in a published decision, the majority rule is that testimony from a deposition that technically violates Rule 32 remains admissible as affidavit testimony in the context of a motion for summary judgment."); <u>see also</u> <u>Alexander v. Casino Queen, Inc.</u>, 739 F.3d 972, 978 (7th Cir. 2014); <u>Vondriska v. Cugno</u>, 368 F. App'x 7, 8–9 (11th Cir. 2010); <u>Tingey v. Radionics</u>, 193 F. App'x 747, 765–66 (10th Cir. 2006); <u>Palm Bay Imports, Inc. v. Miron</u>, 55 F. App'x 52, 57 (3d Cir. 2003); <u>Gulf USA Corp. v. Federal Ins. Co.</u>, 259 F.3d 1049, 1056 (9th Cir. 2001); <u>Diamonds Plus, Inc. v. Kolber</u>, 960 F.2d 765, 768 (8th Cir. 1992). Thus, Rule 32(a)(8) does not categorically bar this court from considering Rosario's deposition on summary judgment. Trial evidentiary issues will be resolved at trial.

### b. **Rosario's Statements Concerning Brooks's Text Message**

Defendant argues that even if Rosario's deposition is admissible, Rosario's statements about whether Laurisa Brooks sent a text message to Plaintiff in March are inadmissible because the statements are not based on personal knowledge of the matter and constitute hearsay. (Def.'s Resp. (Doc. 65) at 5–7.) Plaintiff replies that the personal knowledge requirement

does not apply to a witness testifying pursuant to Rule 30(b)(6). (Pl.'s Reply (Doc. 68) at 10.)

As explained supra Section I.A.2, whether Brooks sent Plaintiff a text message in March is not material for purposes of summary judgment, thus this court need not resolve whether Rosario's recounting of Brooks' text message is admissible at this time.

### c.  Specialized Knowledge Objections

Defendant argues that Rosario's statements regarding the Internal Report generated through Tazworks, (see Rosario Dep. (Doc. 61-2) at 19, 29-30, 44), are inadmissible because Rosario does not have scientific, technical, or other specialized knowledge about the report, and thus was not qualified to state what the notations on the report meant. (Def.'s Resp. (Doc. 65) at 8-9.) Defendant claims that "those statements are not admissions, they are speculation," and, regardless, "are barred from evidence as Plaintiff's attempt to offer expert testimony through an opinion witness." (Id. at 9.) Plaintiff replies that Defendant's use of the Tazworks system was within the scope of matters known or reasonably available to Defendant. (Pl.'s Reply (Doc. 68) at 12.)

The Fourth Circuit has not ruled on whether opposing party statements must comply with the Evidentiary Rules governing lay

- 34 -

and expert testimony.[13] However, the same theory that excludes statements admitted under Evidence Rule 801(d)(2)(A) from the personal knowledge requirement should exclude opposing party statements from the requirements of Rule 701 in this circumstance. Evidence Rule 701 states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

The Advisory Committee's Note to Evidence Rule 801 suggests opposing party statements are not admitted based on their reliability or trustworthiness, but rather as "the result of the adversary system." Fed. R. Evid. 801 Advisory Committee Notes to Subdivision (d)(2) Admissions (1972).

> No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of truthworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

---

[13] Neither party addresses whether statements admitted under Rule 801(d)(2)(A) are subject to the requirements of Rule 701.

Id. One commentator has explained that "[a]dmissions of a party-opponent are not admitted because the person making the statement possesses expertise in the particular area. Whether the person possesses or does not possess expertise is itself completely irrelevant to whether a statement qualifies as an admission of a party-opponent." 6 Handbook of Fed. Evid. § 801:15 (9th ed.) n.12.[14]

Thus, even assuming arguendo that Rosario's statements about the Internal Report are impermissible opinion testimony under Rule of Evidence 701, her statements are admissible as an opposing party statement.

The court will consider the Rosario Deposition to the extent it contains relevant and otherwise proper evidence for

_____

[14] This view was rejected in Aliotta v. Nat'l R.R. Passenger Corp., 315 F.3d 756, 763 (7th Cir. 2003) (holding opposing party statements are not "always" "free from the requirements of Rule 701(c), Rule 702, and Daubert"). However, Aliotta appears to depart from cases outside of the 7th Circuit. See Owens v. Atchison, Topeka & Santa Fe Ry. Co., 393 F.2d 77, 79 (5th Cir. 1968) ("[I]t is well settled that the opinion rule does not apply to a party's admissions."); Wood v. Hartford Ins. Co. of the Midwest, No. 20-cv-212, 2021 WL 6882444, *3 (N.D. Fla. Oct. 22, 2021) ("[T]he evidentiary rules restricting the use of opinion testimony do not apply to party-opponent statements."); Bensen v. Am. Ultramar Ltd., No. 92 CIV. 4420, 1996 WL 422262, *9 (S.D.N.Y. 1996) ("A statement may qualify as an admission even if is in the form of an opinion."); 2 McCormick on Evidence § 256 (8th ed.) ("If the lack of firsthand knowledge of the party does not exclude an admission, then neither should the opinion rule. . . . [T]he prevailing view is that admissions in the form of opinions are competent.").

purposes of summary judgment. This court notes there are several different ways Rosario's testimony can be understood, some favorable to Plaintiff and some favorable to Defendant. At trial, the parties will have an opportunity to present evidence and testimony to clarify any ambiguities or explain Rosario's knowledge.

## 2. <u>Declarations of David Tanner and Michelle Bondurant</u>

In support of its motion for summary judgment, Defendant attached the declarations of David Tanner, (Tanner Decl. (Doc. 51-2)), and Michelle Bondurant, (Bondurant Decl. (Doc. 51-3)). David Tanner is "the VP Software Engineer of MeridianLink." (Tanner Decl. (Doc. 51-2) ¶ 2.) MeridianLink sold its software to Resolve to generate consumer reports, and Tazworks is the platform that runs the software. (<u>Id.</u> ¶¶ 3, 4.) Michelle Bondurant served as the Controller or Chief Financial Officer of Resolve at all relevant times. (Bondurant Decl. (Doc. 51-3) ¶ 2.)

### a. <u>The Tanner Declaration</u>

Plaintiff argues that the Tanner Declaration is untimely because Defendant failed to identify David Tanner pursuant to Fed R. Civ. P. 26(a)(1)(A)(i), and this court should exclude the declaration from the record pursuant to Rule 37(c). (Pl.'s Mem. of Law in Opp. to Def. Full House Marketing, Inc.'s Mot. for

- 37 -

Summ. J. ("Pl.'s Resp.") (Doc. 63) at 30-32.) Defendant argues
Plaintiff's objection is frivolous because Plaintiff identified
a Tazworks representative in his initial disclosures. (Reply to
Pl.'s Opp. to Full House's Mot. for Summ. J. ("Def.'s Reply")
(Doc. 66) at 2.)

Plaintiff's initial disclosures identified "TazWorks'
managers, employees, representatives, and agents" as "likely to
have knowledge relating to . . . public records software
solutions in connection with Resolve Partners' preparation of
consumer reports for employment purposes . . . . TazWorks is in
possession of contact information for these individuals." (Ex.
1, Pl.'s Fed. R. Civ. P. 26(a)(1) Initial Disclosures (Doc. 66-
1) at 5.) Defendant's disclosures "incorporate[d] by reference
any . . . individuals disclosed by other parties in this
matter." (Ex. 2, Def.'s Initial Disclosures Pursuant to Fed. R.
Civ. P. 26(a)(1) (Doc. 66-2) at 3.) Defendant states that "the
information provided by David Tanner is not unique or specific
to him as an individual; his affiliation with Tazworks is what
enables him to provide his declaration. He offers his sworn
statement as an officer of Tazworks, not in his individual
capacity." (Def.'s Reply (Doc. 66) at 4.)

"Rule 37(c)(1) provides that a party who fails to identify
a witness as required by Rule 26(a) . . . is not allowed to use

- 38 -

that witness to supply evidence on a motion." <u>Hoyle v.</u>
<u>Freightliner, LLC</u>, 650 F.3d 321, 329 (4th Cir. 2011). "A party
must make its initial disclosures based on the information then
reasonably available to it." Fed. R. Civ. P. 26(a)(1)(E).

During initial disclosures, Plaintiff did not disclose the
name of the witness, but did disclose the identity of the
anticipated witness by position and subject matter. Defendant's
disclosure then incorporated that disclosure by reference. The
parties were free to obtain additional information about the
identity of the Tazworks witness through discovery. This court
will not exclude the declaration of David Tanner.[15]

### b.    The Bondurant Declaration

Plaintiff argues the Bondurant Declaration is inadmissible
hearsay because it was based on the Tanner Declaration. (Pl.'s
Resp. (Doc. 63) at 33–35.)

The Bondurant Declaration references the Tanner Declaration
in two sentences: "I have read the Declaration of David Tanner.
The notices sent to Plaintiff were consistent with the system

---

[15] Plaintiff alternatively "requests leave to take discovery
to ensure the Court is deciding Full House's motion on a full
and complete record that has been fairly subject to the
adversarial process." (Pl.'s Resp. (Doc. 63) at 28–29.) This
court, on the current record, is not persuaded discovery should
be reopened and therefore declines Plaintiff's request as
untimely. The parties will have an opportunity to complete the
record with testimony and conduct cross-examination at trial.

defaults described by Mr. Tanner, and included a copy of his criminal background report." (Bondurant Decl. (Doc. 51-3) ¶¶ 10, 11.)

Under Civil Procedure Rule 56(c), "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Bondurant Declaration complies with Civil Procedure Rule 56(c). As an employee of Resolve, Bondurant had personal knowledge about the content and meaning of Resolve's Internal Report. Additionally, regardless of any reference to the Tanner Declaration, the underlying facts would be admissible in evidence. Plaintiff does not argue that Bondurant is not competent to testify on the matters stated. Thus, this court will consider the Bondurant Declaration on the pending motions for summary judgment.

### 3. **Defendant's Supplemental Responses**

Plaintiff argues this court should not consider Defendant's supplemental responses, which were submitted after the close of discovery. (Pl.'s Reply (Doc. 68) at 13.) Defendant served its response to Plaintiff's first set of requests for admission on

- 40 -

January 17, 2022, where it "admitted that Laurisa Brooks sent a text message to Plaintiff on or after March 27, 2019, and that message is the best evidence of its content." (Ex. C, Def.'s Resps. to Pl.'s First Set of Reqs. for Admiss. ("Def.'s Resp. to Pl.'s Reqs.") (Doc. 55-4) ¶ 8.) On July 11, 2022, Defendant took the second deposition of Plaintiff, where Plaintiff stated that Laurisa Brooks only sent the text message about his background not meeting Defendant's guidelines in May, not March. (Scott Dep. 2 (Doc. 51-4) at 219–20.) Discovery closed on August 15, 2022. (Text Order entered 06/16/2022.) On August 30, 2022, Defendant served its supplemental response to Plaintiff's requests for admissions, where it clarified its earlier response: "It is further admitted that Laurisa Brooks sent this text message to Plaintiff on May 6, 2019, which is after March 27, 2019, and that message is the best evidence of its content. Except as expressly admitted, denied." (Ex. 2, Def.'s First Suppl. and Corrected Resps. to Pl.'s First Set of Reqs. for Admiss. ("Def.'s Suppl. Resp. to Pl.'s Reqs.") (Doc. 65-2) at 3.)

Defendant argues this court should not consider Defendant's original responses without also considering its supplemental

responses under Evidence Rule 106.[16] (Def.'s Resp. (Doc. 65) at 11.) Defendant states it corrected its response after Plaintiff stated in his second deposition that he only received the text message in May, not March. (Id.) Plaintiff argues that Defendant should not be allowed to supplement its responses after discovery closed, and that its failure to supplement was not substantially justified or harmless. (Pl.'s Reply (Doc. 68) at 14.) This court finds Defendant's failure to supplement its response was harmless.

Under Rule 26(e), a party who has responded to a request for admission must supplement or correct its response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). If a party violates Rule 26(e), that party "is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure

---

[16] Federal Rule of Evidence 106 provides: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part--or any other statement--that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection."

was substantially justified or is harmless." Fed. R. Civ.
P. 37(c)(1).

Defendant supplemented its response two weeks after the
close of discovery, (see Def.'s Suppl. Resp. to Pl.'s Reqs.)
(Doc. 65-2) at 4), and over thirty days after Defendant became
aware of the new information disclosed in Plaintiff's second
deposition, (see Scott Dep. 2 (Doc. 51-4) at 1). Defendant does
not offer a justification for not serving the supplemental
response before the close of discovery; however, the failure is
harmless.

"District courts are accorded 'broad discretion' in
determining whether a party's nondisclosure or untimely
disclosure of evidence is substantially justified or harmless."
Bresler v. Wilmington Trust Co., 855 F.3d 178, 190 (4th Cir.
2017) (quoting Wilkins v. Montgomery, 751 F.3d 214, 222 (4th
Cir. 2014)). Four factors guide this inquiry:

> (1) the surprise to the party against whom the
> evidence would be offered; (2) the ability of that
> party to cure the surprise; (3) the extent to which
> allowing the evidence would disrupt the trial; (4) the
> importance of the evidence; and (5) the nondisclosing
> party's explanation for its failure to disclose the
> evidence.

S. States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318
F.3d 592, 597 (4th Cir. 2003).

> The first four factors listed above relate primarily
> to the harmlessness exception, while the last factor,

- 43 -

addressing the party's explanation for its
nondisclosure, relates mainly to the substantial
justification exception. The party failing to disclose
information bears the burden of establishing that the
nondisclosure was substantially justified or was
harmless.

Bresler, 853 F.3d at 190 (internal citations omitted).

Although Defendant served the supplemental responses after
the close of discovery, the delay was harmless. There was no
surprise to Plaintiff because the response merely echoed what
Plaintiff himself testified to a month and a half prior. (Scott
Dep. 2 (Doc. 51-4) at 219-20.) Furthermore, there is no
indication that allowing the evidence would disrupt the trial.
Admitting the supplemental responses would not require parties
to re-brief their motions. Roncales v. Cnty. of Henrico, No.
19cv234, 2021 WL 1738878, at *4 (E.D. Va. May 3, 2021) (holding
that two days was enough time to incorporate new disclosures
into defendant's motion for summary judgment when there was a
small amount of updated materials and defendant was on notice of
plaintiff's reliance on similar evidence). Plaintiff was aware
of Defendant's argument that the text message was sent only in
May, was present at Plaintiff's second deposition, and had
access to Defendant's supplemental response before filing his
motion for partial summary judgment. (See Pl.'s Br. (Doc. 56) at
14 n.3.)

Finally, because the supplemental response only relates to a non-material fact for purposes of summary judgment, the "importance" factor does not weigh against considering Defendant's supplemental response.[17] Because this court finds the disclosure was harmless, this court need not address the last factor and consider whether the delay was substantially justified. Roncales, 2021 WL 1738878, *4 ("Because the Court need only find that [the] nondisclosure was 'substantially justified' or 'harmless,' the Court need not make a finding as to substantial justification.").

Thus, this court declines to exclude from consideration the Rosario Deposition, the Tanner Declaration, the Bondurant Declaration, or Defendant's supplemental responses on the parties' respective motions for summary judgment.

---

[17] The contested supplemental response only goes to the issue of whether Brooks sent a text message to Plaintiff in March. As discussed supra Section I.A.2, this is not a material dispute of fact for purposes of summary judgment.

IV.  **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. If the "moving party discharges its burden . . ., the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718–19 (4th Cir. 2003) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)).

When facing cross-motions for summary judgment, this court reviews "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citations and internal quotation marks omitted). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational

- 46 -

inferences in the light most favorable to the party opposing

that motion." Id. (citation and internal quotation marks

omitted).

**V.    SUBSTANTIVE ANALYSIS**

Under the FCRA, before taking adverse action against a

consumer based in whole or in part on a consumer report, an

employer "shall provide to that consumer to whom the report

relates -- (i) a copy of the report; and (ii) a description in

writing of the rights of the consumer under this subchapter[.]"

15 U.S.C. § 1681b(b)(3)(A). An adverse action means "a denial of

employment or any other decision for employment purposes that

adversely affects any current or prospective employee." Id.

§ 1681a(k)(1)(B)(ii). A consumer may recover actual damages for

a negligent FCRA violation, id. § 1681o(a)(1), and both actual

and punitive damages for willful violations, id. § 1681n(a).

Defendant does not deny it took adverse action against

Plaintiff based in whole or in part on a consumer report in

March 2019. (Def.'s Br. (Doc. 52) at 16.) The issue is whether

Defendant sent Plaintiff a copy of his consumer report in March
2019.[18]

## A. **Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment on the issue
of whether Defendant negligently violated the FCRA. Defendant
has presented evidence that creates a genuine dispute of fact as
to whether Plaintiff's consumer report was sent to him in March.
The Bondurant Declaration, (Bondurant Decl. (Doc. 51-3) ¶ 9),
the Rosario Declaration, (Rosario Decl. (Doc. 51-1) ¶¶ 18-19),
and Salazar's Deposition, (Salazar Dep. (Doc. 105-5) at 161-62),
all dispute Plaintiff's argument that he never received his
consumer report in March.

Generally, if there is conflicting testimony between sworn
affidavits and deposition testimony, summary judgment is
inappropriate because it would require evaluating the
credibility of witnesses. See Davis v. Zahradnick, 600 F.2d 458,
460 (4th Cir. 1979) ("[Summary judgment] may not be invoked
where . . . the affidavits present conflicting versions of the
facts which require credibility determinations.").

---

[18] Despite Plaintiff's testimony that he never received any
communication from Defendant or Resolve via email in March,
(Scott Dep. 2 (Doc. 51-4) at 30-33), Plaintiff's argument is
that even if Plaintiff did receive an email in March, that
communication did not contain a copy of Plaintiff's consumer
report. (See Pl.'s Br. (Doc. 56) at 22-26.)

- 48 -

While this court should be wary of so-called "sham affidavits," or an affidavit or declaration that clearly contradicts the affiant's prior deposition testimony, see Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (holding the sham affidavit did not create a genuine dispute of material fact), this rule should only be applied "to situations involving flat contradictions of material fact," Altaweel v. Longent, LLC, No. 19-CV-573, 2022 WL 1463059, *3 (E.D.N.C. May 9, 2022); see also Button v. Dakota Minn. & E. R. Corp., 936 F.3d 824, 830 (8th Cir. 2020) ("[I]f the affidavit merely explains portions of a prior deposition that may have been unclear, it is not a sham affidavit."). Rosario testified repeatedly during her deposition that she was not sure what the entries on the Internal Report meant. (See, e.g., Rosario Dep. (Doc. 61-2) at 29-30). Additionally, Rosario's declaration is supported by other evidence in the record. Thus, Rosario's declaration, among other evidence in the record, is sufficient to create a genuine dispute of material fact and Plaintiff's motion for partial summary judgment will be denied.

However, on cross-motions, the fact that one party is denied summary judgment does not automatically indicate the opposing party should be granted summary judgment. See Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) ("When

- 49 -

faced with cross-motions for summary judgment, the court must review each motion separately on its own merits.")

### B. **Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment on the issue of whether it negligently or willfully violated the FCRA.

#### 1. **Negligent Violation of the FCRA**

Defendant has put forth evidence to show that, as a default, a Pre-Adverse Action Letter contains a consumer report. (See Tanner Decl. (Doc. 51-2) ¶ 6.) Defendant has also proffered evidence to show that the Pre-Adverse Action Letter sent to Plaintiff on March 27, 2019, included a copy of his consumer report. (See Rosario Decl. (Doc. 51-1) ¶¶ 16–19.)

However, on consideration of the record as a whole, and drawing all reasonable inferences in favor of Plaintiff, Plaintiff has created a genuine dispute of material fact over whether Defendant sent Plaintiff a copy of his consumer report in March.

Defendant's representative testified that, based on the Internal Report, it appeared neither Resolve nor Defendant sent Plaintiff a copy of his consumer report in March. (Rosario Dep.

(Doc. 61-2) at 44.)[19] Additionally, Plaintiff testified that he did not receive a copy of his consumer report in March. (Scott Dep. 1 (Doc. 105-1) at 108; Scott Dep. 2 (Doc. 51-4) at 30—33.)

Although Defendant has put forth a great deal of evidence disputing Plaintiff's version of the facts, weighing evidence to resolve factual disputes and making credibility determinations is not an appropriate role for this court at the summary judgment stage. Jacobs v. N.C. Admin. Off. of the Courts, 780 F.3d 562, 569 (4th Cir. 2015).

This court notes that neither the Bondurant Declaration or the Rosario Declaration specifically explained why the Internal Report's entries are different from March to May. (See generally Bondurant Decl. (Doc. 51-3); Rosario Decl. (Doc. 51-1).) More importantly, this court cannot ignore testimony, even if

_____

[19] Plaintiff's arguably misleading questioning in the Rosario deposition has led to an unusual posture of the facts in this case. Although Rosario said the Internal Report shows that a consumer report was not sent to Plaintiff in March, she also said that she may not be qualified to testify about the language used in the Internal Report. (Rosario Dep. (Doc. 61-2) at 29—30.) Defendant has offered the declaration of a Resolve employee that specifically states a consumer report was sent to Plaintiff in March, as reflected in the Internal Report. (Bondurant Decl. (Doc. 51-3) ¶¶ 6—9.) Because assessing the credibility of witnesses or assigning weight to testimony is a matter left for the jury, Rosario's deposition, although a close call, is sufficient to create a genuine dispute of fact at summary judgment. However, the issue of whether Rosario may be competent to testify about the Internal Report is an issue that may be re-visited closer to trial.

ambiguous testimony, from Defendant's representative that Plaintiff did not receive a consumer report in March. (Rosario Dep. (Doc. 61-2) at 29-30.) Thus, Defendant is not entitled to summary judgment on the issue of whether Defendant negligently violated the FCRA.

### 2. **Willful Violation of the FCRA**

The Supreme Court in Safeco Ins. Co of Am. v. Burr defined "willfulness" in the context of the FCRA to include both knowing and reckless violations. 551 U.S. 47, 57 (2007). Safeco also carved out a "safe harbor provision," where if a defendant adopts an objectively reasonable interpretation of the FCRA, a defendant does not act willfully. See Milbourne v. JRK Residential Am., LLC, 202 F. Supp. 3d 585, 591 (E.D. Va. 2016).

Defendant states: "Plaintiff is not entitled to actual damages, and he has not shown any violation of the FCRA, let alone one that is willful, so he is not entitled to punitive damages." (Def.'s Br. (Doc. 52) at 20.) In response, Plaintiff states: "there is a genuine dispute as to whether such failure was willful in light of [Defendant's] admitted knowledge of the FCRA's clear statutory mandate." (Pl.'s Resp. (Doc. 63) at 17.)

Here, Defendant does not argue that it adopted an objectively reasonable interpretation of Section 1681b(b)(3)(A). In fact, it does not cite to any cases or the record in support

of its argument that any alleged violation was only negligent but not willful. Defendant merely argues it sent Plaintiff a consumer report, and therefore did not violate the FCRA. (Def.'s Br. (Doc. 52) at 20.) As explained supra, there is a genuine dispute of fact over whether Defendant sent the consumer report in March. Thus, this court will not grant summary judgment for Defendant on the issue of willfulness.

**C.  Damages**

Defendant argues that even if it violated the FCRA, Plaintiff would not be entitled to actual damages because "his dishonesty on his application would have been a valid basis for Full House declining Plaintiff the position he applied for." (Id. at 19.) Plaintiff argues that Defendant's argument that it would not have hired Plaintiff "is not factually accurate," and Plaintiff is entitled to damages because he suffered "emotional distress," and "has sufficiently explained the circumstances of his emotional distress and described how that distress manifested." (Pl.'s Resp. (Doc. 63) at 28, 29.)[20]

---

[20] Plaintiff also argues that Defendant's damages argument is foreclosed by the "after-acquired evidence doctrine." (Pl.'s Resp. (Doc. 63) at 23-26.) Because this court rejects Defendant's damages argument on other grounds, it will not address Plaintiff's argument based on the "after-acquired evidence doctrine."

A consumer may recover actual damages for negligent FCRA violations, 15 U.S.C. § 1681o(a)(1), and both actual and punitive damages for willful violations, id. § 1681n(a). "Actual damages may include not only economic damages, but also damages for humiliation and mental distress." Sloane v. Equifax Info. Servs., LLC, 510 F.3d 495, 500 (4th Cir. 2007).

Plaintiff need not show that Defendant would have hired Plaintiff but for the inaccurate consumer report to be entitled to damages. See Dalton v. Cap. Associated Indus., Inc., 257 F.3d 409, 418 (4th Cir. 2001) ("Even though [defendant's] false report is not what prevented [plaintiff] from getting a job with [plaintiff's potential employer], we are hesitant to say that the district court necessarily would have concluded that [plaintiff] could not show that [defendant] caused him any damages on his FCRA claims. . . . [Plaintiff] need only show that he suffered damages from the false report, regardless of how [plaintiff's potential employer] reacted to the report."). Even assuming Plaintiff is not entitled to damages for lost wages, Plaintiff testified at length about his emotional and mental distress suffered as a result of the false report. (See Scott Dep. I (Doc. 105-1) at 59–63.) Thus, Defendant's argument that Plaintiff is not entitled to any damages because it would not have hired him regardless of the consumer report does not

require summary judgment for Defendant. As explained in the order denying summary judgment in Scott I, the issue of damages will have to be resolved during trial. (No. 19-cv-1077, (Doc. 112) at 30-33.)

## VI.  **MOTION FOR SANCTIONS**

Defendant moves for Rule 11 sanctions against Plaintiff and his attorneys "for filing a knowingly false complaint in this action in the first place and, in the alternative, for failing to dismiss the complaint after it became apparent that there was no valid basis for proceeding against [Defendant]." (Sanctions Mot. (Doc. 53) at 1.)

Under Rule 11, by filing a pleading or written motion to the court, an attorney "certifies that to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "[W]here there is no factual basis for a plaintiff's allegations, the complaint violates Rule 11's factual inquiry requirement." Brubaker v.

- 55 -

City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991); Columbia Gas Transmission, LLC v. Haas, No. 22-1504, 2023 WL 4787441, at *4 (4th Cir. 2023) ("Sanctions are only warranted if an allegation has no factual basis."). The Advisory Committee Notes to Rule 11 state: "if a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would have sufficient 'evidentiary support' for purposes of Rule 11." Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendments.

Defendant alleges Plaintiff violated Rule 11(b) by filing a complaint with an insufficient factual basis, or, in the alternative, pursuing the claim after discovery revealed no factual support for his claim. (Sanctions Mem. (Doc. 54) at 5.)

As explained above, Plaintiff has produced sufficient evidence to create a genuine dispute of material fact as to whether Defendant sent Plaintiff a copy of his consumer report in March. Sanctions are not warranted because Plaintiff's allegations have at least some factual basis.

VII. **CONCLUSION**

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment, (Doc. 51), Defendant's motion to impose Rule 11 sanctions, (Doc. 53), and Plaintiff's motion for partial summary judgment, (Doc. 55), are **DENIED.**

- 56 -

This the 4th day of March, 2024.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
                United States District Judge